## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| URSULA CULPEPPER, | : | Civil No. 1:23-CV-01298 |
| Plaintiff, | : | |
| v. | : | |
| COVANTA ENERGY SERVICES, INC., et al., | : | |
| | : | Judge Jennifer P. Wilson |
| Defendants. | | |

### **MEMORANDUM**

This is an employment discrimination case brought by Plaintiff Ursula Culpepper ("Culpepper"), an employee of Defendants Covanta Energy Services, Inc. et. al., ("Covanta"). This action is brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) ("Title VII"), and the Pennsylvania Human Relations Act, 43 PA. STAT. § 955 ("PHRA"). Before the court is Covanta's motion to dismiss Count II of Culpepper's complaint, alleging retaliation under Title VII, and portions of Count III, alleging retaliation under the PHRA. Because Culpepper failed to exhaust her administrative remedies with respect to these claims, the motion will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Culpepper filed her initial complaint on August 8, 2023. (Doc. 1.) She then filed her amended complaint on September 1, 2023. (Doc. 3.) According to the allegations in the amended complaint, Culpepper began working as an administrative assistant at Covanta on January 3, 2007, in Harrisburg, Pennsylvania. (*Id.* ¶ 12.) Around 2011, a maintenance mechanic for Covanta named Jerome Smith ("Smith") made sexual comments to Culpepper and requested sexual favors from her, which she unequivocally rejected. (*Id.* ¶ 15.) Subsequently, Culpepper lodged a complaint to her supervisor at the time, Alan Lengle. (*Id.* ¶ 17.) Following an investigation and a directive issued by Covanta, Smith apologized and stopped his behavior. (*Id.* ¶ 18-19.)

Several years later, in 2018 and 2019, Smith began to ignore the directive and made further offensive sexual remarks to Culpepper. (*Id.* ¶ 21-22.) Then, in February 2020, Smith made sexually suggestive and threatening comments towards Culpepper over the phone, causing her to report Smith to Covanta's facility manager, Kevin Connor ("Connor"). (*Id.* ¶ 25-26.) Connor and Covanta allegedly did not take any action on this report or investigate the incident. (*Id.* ¶ 28.) On April 20, 2020, Smith barged into Culpepper's home with a bottle of wine and confronted Culpepper's teenage daughter, who ultimately convinced Smith to leave the house. (*Id.* ¶ 32-34.) Soon after, Smith returned to Culpepper's home in

his vehicle, and Culpepper and her daughter again convinced Smith to leave. (*Id.* ¶ 36-37.) Culpepper immediately alerted Connor of the incident, and Connor elevated the complaint to Defendant's Human Resource department. (*Id.* ¶ 38-39.)

In May 2020, Adrienne Christmas ("Christmas"), Covanta's Human Resources Director, alerted Culpepper that she did not intend to take action beyond issuing an edict preventing Smith from entering the building where Culpepper worked. (*Id.* ¶ 42). In January 2021, Culpepper discovered that Smith had begun to disparage her among colleagues by making sexual remarks and spreading rumors about her. (*Id.* ¶ 45.) Culpepper then lodged another complaint with Connor. (*Id.* ¶ 46.) In response, Covanta claimed that they would enforce the earlier edict banning Smith from entering the building where Culpepper worked. (*Id.* ¶ 52.) However, Covanta, allegedly acting through its agents Connor and Christmas, failed to take steps to ensure that Smith complied with the edict mandating that he remain in a separate building from Culpepper. (*Id.* ¶ 54.).

A few months later, Smith was promoted and assigned supervisory responsibilities. (*Id.* ¶ 59.) In July 2021, Culpepper was in the parking lot at Covanta and Smith looked at her and "slowed his gait and appeared to wait for [her]." (*Id.* ¶ 60.) The incident caused Culpepper to experience symptoms of a panic attack. (*Id.* ¶ 60). Culpepper once again reported Smith's behavior to Connor and Covanta's operations manager Bret Steinmeir, but Smith was still

allowed to enter the building where Culpepper worked on multiple occasions. (*Id.* ¶ 63.) Culpepper alleges that Covanta coordinated Smith's entry into the building. (*Id.* ¶ 64.)

Culpepper alleges that, as a result of her opposition to the alleged sexual harassment and her repeated requests for protection from Smith, Covanta "embarked on a campaign to retaliate against [her]." (*Id.* ¶ 67.) The alleged retaliation includes refusing to enforce the edict against Smith, purposefully scheduling trainings for Smith in the building where Culpepper worked, subjecting Culpepper to heightened scrutiny, eliminating essential functions of Culpepper's job, undermining Culpepper's authority and responsibility, and omitting Culpepper from scheduled meetings within the department, among other allegations. (*Id.* ¶ 67.) Culpepper further alleges that all of the circumstances detailed above contributed to a toxic work environment in which she was forced to work. (*Id.* ¶ 68.) Count I of Culpepper's complaint is a claim of sexual harassment. (*Id.* p. 15.)[1] Count II of Culpepper's complaint is a retaliation claim under Title VII, while Count III contains a claim under the PHRA, including retaliation. (*Id.* pp. 19, 24.) Covanta's motion to dismiss relates only to Count II and the retaliation portions of Count III. (Doc. 6, p.1.)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Covanta filed this motion to dismiss on November 7, 2023, along with a supporting brief. (Docs. 6, 7.) Culpepper filed a brief in opposition on December 7, 2023. (Doc. 14.) Covanta filed its reply on January 4, 2024. (Doc. 22.) Thus, the motion is ripe for review.

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States, and 28 U.S.C. § 1367, which gives district courts supplemental jurisdiction over state law claims that are so closely related to federal claims as to be part of the same case or controversy. Venue is appropriate in the Middle District of Pennsylvania because all relevant actions took place within the Middle District. 28 U.S.C. § 1391(b)(2).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

A plaintiff is required to exhaust administrative remedies before bringing a claim for judicial relief. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d. Cir. 2013); *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d. Cir. 1997). To maintain a suit under Title VII and the PHRA, a plaintiff must file a charge of discrimination with the EEOC and the PHRC and procure notice of the right to sue. *Mandel* 706 F. 3d at 163; *Atkinson v. Lafayette Coll.*, 460 F.3d 447, 453 (3d. Cir. 2006.) When a judicial complaint contains factual allegations that were not contained in an administrative complaint, a plaintiff has exhausted administrative remedies when the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior administrative complaint or the investigation arising therefrom. *Waiters v. Parsons*, 729 F.2d 233, 237 (3d. Cir. 1984); *Antol v. Perry*, 82 F.3d 1291, 1295 (3d. Cir. 1996). "The parameters of the civil action in the district court

are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the administrative charge." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d. Cir. 1978).

Covanta argues that Culpepper's retaliation claim is outside the scope of her administrative complaint because she failed to check the box for retaliation on her joint EEOC and PHRC complaint. (Doc. 7, pp. 8-9.) Covanta relies on *Mandel,* 703 F.3d at 164, wherein the Third Circuit stated that "even a non-lawyer could easily have checked the box for retaliation on the charge," and dismissed the plaintiff's complaint both for failure to check the box for retaliation and failure to allege retaliatory conduct. *Id.* However, subsequent Third Circuit precedent indicates that failure to check a box on the administrative complaint is not dispositive. *Tourtellotte v. Eli Lilly & Co.*, 636 Fed. Appx. 831, 851 (3d. Cir. 2016) ("[Plaintiff's] claims do not fail simply because she did not check the box indicating she wished to file a charge of discrimination on the basis of disability.") Therefore, Culpepper's suit will not be dismissed simply because she failed to check the box for retaliation.

Instead, the determinative question is whether the allegations of retaliation in the judicial complaint are fairly within either the scope of the administrative complaint or the investigation which could reasonably be expected to grow out of it. *Waiters*, 729 F.2d at 237; *Ostapowicz*, 541 F.2d at 398-99. Turning first to the

scope of the administrative complaint, the joint EEOC/PHRC administrative complaint filed by Culpepper contains allegations that Culpepper was subjected to sexual harassment by Smith, Culpepper reported the harassment to Connor, and Covanta failed to do anything to stop the harassment. (Doc. 14-1, p. 3-4.) Even liberally construing the scope of the original charge, these allegations do not state an allegation of retaliation nor would they reasonably be expected to lead to an investigation into retaliation. *Hicks v. ABT Assocs., Inc.,* 572 F.2d 960, 965 (3d Cir.1978) (holding that the scope of the original charge should be liberally construed because charges are "most often drafted by one who is not well versed in the art of legal description."). Culpepper fails to allege that Smith's continued harrassment by way of breaking into her home or spreading rumors about her was in any way connected to her reports of the earlier harassment to defendants. As such, the continued actions of Smith at most constitute continued harassment, not retaliatory action by Covanta.

As Culpepper's administrative complaint itself fails to allege any claims of retaliation, she next relies on her responses to the PHRC's Request for Information ("RFI") that were submitted as a follow up to her administrative complaint. (Doc. 14, p. 11.) Assuming that Culpepper's responses to the PHRC's RFI do fall within

the scope of a reasonable investigation growing out of her administrative complaint[2], the responses still fail to allege a valid claim of retaliation.

Culpepper claims the following RFI responses would lead a reasonable investigator to investigate claims of retaliation: 1) Connor was unwilling to help her process worker's compensation claims and chastised her for being confused; 2) Christmas, who assisted in an investigation into plaintiff's harassment claims, removed Culpepper's access to the Kronos Time Clock System while Culpepper worked from home; 3) Connor interfered with one of Culpepper's sexual harassment complaints by compelling a witness to alter his accounts of events, leading plaintiff to feel "set up;" and 4) Culpepper was overlooked for promotions to positions for which she was qualified. (Doc. 14-2, pp. 18, 23, 24, 26.)

A reasonable investigation of these responses would not encompass claims of retaliation. Culpepper's allegation that Connor did not help her and alluded to her confusion as she attempted to begin the worker's compensation process bears no obvious connection to any of Culpepper's reports of sexual harassment. (Doc. 14-2, p. 18.) The same can be said of Christmas' alleged removal of Culpepper's Kronos time clock. (*Id.* at 24.) As to Culpepper's claim that she was passed up for promotions, Culpepper alleged that this was due to her status as the only black

---

[2] Culpepper does not cite any legal authority for the proposition that RFI responses should be considered as being within the scope of a reasonable investigation. (Doc. 14, p. 11.) The court did not independently find authority supporting this assertion.

female who has ever worked for the company, not because she reported Smith's harassment. (*Id.* at 26.) In fact, Culpepper does not allege that any of these alleged acts of retaliation occurred in response to her harassment reports. As such, these RFI responses failed to put a reasonable investigator on notice of a claim of retaliation. Culpepper's final allegation that Connor interfered with a witness to her harassment does bear some connection to her reports of harassment. (Doc. 14-2, p. 23.) However, this claim also fails to put a reasonable investigator on notice of a retaliation claim because it merely points to a deficiency in the investigation rather than a retaliatory action on the part of Covanta.

As a final point, Culpepper's RFI responses would not put a reasonable investigator on notice of a retaliation claim because of the disparity between the factual allegations in the judicial complaint and the administrative complaint. The Third Circuit has stated:

> [W]e must compare the two sets of allegations (the administrative complaint and the judicial complaint) and evaluate whether they are sufficiently related such that a reasonable investigation of the original charge would address the subsequent, unexhausted claims. In comparing the two sets of allegations, we look for factual similarities or connections between the events described in the claims, the actors involved, and the nature of the employee conduct at issue.

*Simko v. United States Steel Corp.*, 992 F.3d 198, 210-11 (3d. Cir. 2021). The allegations of retaliatory actions made by Culpepper in her judicial complaint have no overlap to what she claims is contained in her administrative complaint and RFI

responses. (*See* Doc. 3, ¶ 67; Doc. 14-2, pp. 18, 23-24, 26.) Given this lack of overlap in the factual allegations, Culpepper's retaliation claims exceed the scope of her administrative complaint and a reasonable investigation that would arise from it. Accordingly, the motion to dismiss will be granted on this basis. Count II and the relevant portions of Count III will be dismissed with prejudice[3].

Because the court finds that Culpepper's complaint must be dismissed for failure to exhaust administrative remedies, it will not reach the issue of whether or not Culpepper failed to state a claim.

## CONCLUSION

Because Culpepper failed to show that her judicial claims for retaliation fall within the scope of her administrative complaint or a reasonable investigation arising therefrom, the court will grant Covanta's motion to dismiss Count II and portions of Count III relating to retaliation with prejudice. An appropriate order will follow.

                                         s/Jennifer P. Wilson
                                         JENNIFER P. WILSON
                                         United States District Judge
                                         Middle District of Pennsylvania

Dated: July 12, 2024

---

[3] "Where, however, an EEOC charge neither checks the appropriate box for a claim nor alleges sufficient facts to put the EEOC on notice of the claim, the district court must dismiss the claim with prejudice for failure to exhaust." *Voss v. Manitowoc Cranes, LLC*, No. 1:20-CV-00754 2021 WL 1174498 at *5 (Mar. 29, 2021 M.D. Pa.).